We'll next hear Morrison v. Eminence Partners. May it please the Court, Your Honors, my name is Jeffrey Abraham and I'm appearing on behalf of Appellant Larry Morrison, who was the plaintiff in the proceedings before the District Court. This appeal follows the District Court dismissal of plaintiff's claims on a Rule 12b6 motion and an interpretation of a rule of law. Accordingly, this Court employs a de novo standard in reviewing the issues presented on this appeal. The claim plaintiff is asserting arises under Section 16b of the Exchange Act, Securities Act of 1933, under the Federal Securities Law, by assuming or succeeding to the registration statements previously filed by Men's Warehouse, with TBI even utilizing the same filing number with the SEC as the one previously used by Men's Warehouse. The reorganization was completed on January 31, 2016, or nine days before plaintiff would have been free to file the Section 16b complaint on February 9, 2016, following the statutorily mandated 60-day waiting period, and the reorganization also took place without the required shareholder approval required by SEC Rule 414C. The District Court ruled that the reorganization deprived plaintiff of standing to sue because TBI was not the issuer, which is a defined term in the Exchange Act within the meaning of Section 3A.8, and that issuer is defined as any person who issues or proposes to issue any security. And more specifically, the District Court relied on dicta, I think everybody acknowledges its dicta, in the Supreme Court's decision in Gallust v. Mendel. No dicta stronger, though, than that which comes to us from the Supreme Court. So, why don't you tell, I mean, we know this background, why don't you tell us where you think the errors are here? Well, where the errors are is that even though dicta from the Supreme Court is strong, it's not binding because this wasn't the fact pattern considered by the Supreme Court. In the Supreme Court, you had— That's debatable, but in any event, so the first argument is you think that the Court applied dicta that it should, that it shouldn't have, so we have to decide whether it is dicta or not, and then that's your first argument, and then you have another one? Yes, well, the first argument is that it's dicta, that wasn't the precise issue which the Supreme Court addressed. You have two hurdles. First, you have to persuade us it was dicta as opposed to integral to the rationale of the Court decision. I mean, you know, the fact that it's factually, there are factual distinctions doesn't mean that it wasn't integral to the rationale, but even if you clear that hurdle, you would have to persuade us that we should reach some other legal conclusion on that question. Okay. You should reach an other legal conclusion on that section because Rule 414 specifically provides that in this case, the new issue, the issuer, TBI, is the same issuer as Men's Warehouse. All right, but Rule 414 doesn't relate to Section 16B. It provides only that an issuer succeeding to another corporation's Exchange Act filing succeeds to registrations that the predecessor entity had filed. Well — The SEC had proposed other rules that would have authorized Section 16BB suits, but those rules were withdrawn after the — or it was granted in Gallus. Well, Rule 414 doesn't apply to Section 16B, but this was a reorganization which took place pursuant to Rule 414, and Rule 414 provides that TBI is the issuer within otherwise — otherwise it would be unlawful for TBI to be registered under the Securities Act because they didn't file their own registration statement. So it is very much the same issuer as Men's Warehouse. It uses the same registration statements. It follows — uses the same file number, and in a corporate form, it's the exact same corporation except now it's a — TBI is a holding company of Men's Warehouse through a merger of a wholly owned subsidiary form specifically for this purpose. But more importantly, the Supreme Court has held itself in Kirstein, which we cite in our brief, that dicta concerning the statute's meaning does not control the outcome of future actions. And I couldn't say it better than the Supreme Court. The Supreme Court said, is this — None of us can. Well, let me just tell you what the Supreme Court said, which we quote in our brief. Is this Court, once having written dicta, calling a tomato a vegetable, bound to deny that it is a fruit forever after? It was speaking as to its own prerogative, not our prerogative. I respectfully disagree. If it's dicta, it's dicta. But let me speak more importantly — I would argue that. But had the Court held instead, as you're urging us to do, that a Section 16b issuer can include parent companies, the whole remainder of the Court's decision would have been unnecessary. That seriously undercuts your argument that it was dicta, not integral to — But in that case, you had a previously existing issuer with its own registration statement and there was a merger. So there was no argument even made by the plaintiff in that case that it was a successor issuer. That wasn't even an issue in the case, that this was the same issuer. This case is just different, entirely different. Our colleague, Judge LaValle, who's written on this question of what's dicta and what's not, has specifically said that when you turn the question — the question proposition around to state the opposite, and that would require a change in either the Court's have dictum. And that's what would have happened in Gallas. Well, let me just say this, Your Honor. I see my time is running low. But if you take a look — I think it's Judge Jacob's decision in Briscoe, and he gives a test for how — whether something is dicta in the context of statutory definition. He says in order to do so, the Court would cite the statute, quote the statute, and discuss the interplay between the text and the new principle. Now I will grant you that the Court in Gallas cited the statute. I'm not quite sure it quoted the statute, but I'm absolutely certain it did not discuss the interplay between the text and the new principle. This is a new principle of law. It's contrary to the overall structure of the federal securities law and the way this merger took place pursuant to Securities Act Rule 414. And quite frankly, it potentially obliterates Section 16B to the extent that people — companies could simply reorganize in violation of Rule 414 without shareholder approval and just get rid of any potential 16B case by doing that. Thank you, Your Honor. Good morning, Your Honors. Michael Schwartz for the eminence defendants. I'll try to be brief because I think Judge Raggi made many of the points that I wish to make. But in this case, as Judge Abrams found, that the result was dictated by the Supreme Court's result in Gallas v. Mendel, where the Supreme Court unanimously held that the only textual restrictions on the standing of a party to bring suit under Section 16B are that the plaintiff must be the owner of a security of the issuer at the time that the suit is instituted. Here, the issuer was men's warehouse. That's a complaint of short-swing trading that eminence engaged in. However, at the time of suit, the plaintiff shareholder was a shareholder of the parent corporation. And not only does Gallas make clear that there's no standing in that circumstance because the plaintiff is not a shareholder of the issuer, but is a shareholder of the parent instead. This Court has many prior — Shouldn't we be concerned, though, about the kind of loophole that this reading creates? I mean, we don't get to this point in the — given the 12v6 position here. But your adversary argues that because of the 60-day — I guess it's 60-day period that — Yes, Your Honor. — it needs to be waited after a complaint is filed and action sought, that a nimble corporation can reorganize easily and make the parent stand in the shoes of the issuer and preclude any action on the short-swing profits. Isn't that something we should be concerned about? I don't think so, Your Honor. I think certainly it's not present on the facts of this case. And the facts in this case — But generally, yeah. Generally — It doesn't allow that possibility. I think the Supreme Court has been clear in this Court in prior decisions that Section 16b is a strict liability statute and that the Court should not be getting into the policy of looking behind it. As to — Yes. Yes. And as — And you've cut the knees off of the individual enforcer. Well, it's no different than if there's a merger or other type — I suppose if there's a fraudulent reorganization set to deprive standing, that would implicate the policy concerns. But in Untermeyer, this Court said even if there is an allegation of a fraudulent reorganization, that doesn't mean that we should get — we should look into that when assessing whether there's appropriate Section 16b standing or not. Certainly — and this Court recognized previously that the policy concern that you're raising is absolutely present there when there's an allegation of some timing issue to deprive somebody of standing. Nevertheless, because of the strict liability nature of the statute, the Court shouldn't get into it. And again, here, not at all present because in the record, it's undisputed that prior to receiving a letter from the plaintiff commencing the 60-day period, Men's Warehouse had announced that it was undergoing a corporate reorganization. It was just a few days before, right? I wondered about that. Yes. But the — but the — but the allegation that it was somehow fraudulent doesn't match. It's just not plausible. It's not possible. There's so many other shortcomings to that allegation. And in terms of the 60-day period, there are cases where somebody said, oh, no, I'm concerned about being prejudiced, files suit, and there's been some excuse in those circumstances to allow for that. So, look, Mr. Abraham is a — he's in the professional Section 16b plaintiff's bar. He brings a lot of these suits. He knows the statute. He could have sought to do that. But notwithstanding that, the equities may be, as you're saying, it's a statute that needs to be strictly construed. The — in Golis, the Supreme Court said that. This Court, in very — in the fraudulent reorganization context, has said, we're not going to look into that. And Judge Abraham said that in her decision. Okay. Thank you. Thank you, Your Honor. And with regard to — I just want to spend a moment addressing this 414 issue. I think it's really mischaracterizing what happened in the reorganization. It was a holding company reorganization, but men's warehouse continues to exist. Men's warehouse is still the issuer under the statute, even though it doesn't — it's not a publicly traded issuer. In what way does men's warehouse continue to exist, other than not having been dissolved? It has all the assets. And in the merger agreement — yeah, in the merger agreement, which is in the record — I'm Oh, I won't give a record set, I guess, right now. But in any event, it provides that the surviving company, which is men's warehouse, will continue to maintain the assets. So it's not a — it's not a sham-type setup, if you will, even if you were worried about that policy concern. Men's warehouse continues to have the assets. Mr. Abraham says, well, the rule requires that somehow the assets be transferred from the predecessor to the successor corporation, but that didn't happen here, and that frequently doesn't happen, because in practice, as we show through the no-action letters that are frequently provided by the SEC, the SEC takes a view that as long as you're indirectly owning the assets from the parent level down to the subsidiary level, that's enough to satisfy the rule, even though it's not a technical requirement. So Mr. Abraham takes the leap from Rule 414, saying there needs to be a transfer of assets, to saying that a transfer of assets actually happened. Well, it didn't actually happen. It frequently doesn't happen. And in fact, it doesn't matter, because what — because this Court has been clear, where the surviving corporation continues to exist, you don't have standing as a shareholder of the parent corporation. That's a square holding of the — of this Court previously in Untermyer. It's also the holding of the Supreme Court in Golas. As Judge Raji pointed out, the whole analysis of continuing ownership wouldn't have been necessary if the shareholder there — if the shareholder plaintiff who owned shares in the parent was sufficient enough to confer standing. Thank you. Real briefly, we also have alternative grounds for affirmance. If the Court — and those are twofold. One is that Section 16B provides that for liability to arise, there has to be a matchable purchase and sale within a six-month period. And the Supreme Court has ruled in Formos-McKesson, and the SEC has implemented a rule in 1682 that the purchase that takes you over 10 percent does not constitute a matchable purchase or sale because it cannot be based on inside information. There's no inference that that purchase took you over. Here, there was a purchase of 1.125 million shares in a single trade reported on the — my client's Form 13D, which is the basis for the suit. In the record is also the New York Stock Exchange consolidated tape, which shows a single trade in that same amount. Mr. Abraham has complained about that not being authenticated. He attached that to his complaint. It's incorporated by reference in the complaint. And since it's in a documentary form, it should prevail, making his claim that there were many smaller trades not plausible. And lastly, he argues that there might be liability because of a group-type agreement that would have collectively put Men's Warehouse over 10 percent between eminence and the board. Two problems with that. The agreement was not between eminence and the board members. It was a standstill agreement between eminence and the company. So there's no agreement. And you also have to have a common objective with regard to your agreement. He hit — the common objective he puts forward is that the board wanted to maintain their position in entering into a standstill agreement with my client eminence, and eminence had a profit motive. Those are not a common objective. There are two different reasons for running into the agreement. And furthermore, this Court last year ruled that a profit motive is not enough for a common purpose to have a Section 16B — I'm sorry, a group under Section 13D. If there are no further questions, I'll yield the rest of my time, Your Honors. MS. GOTTLIEB Thank you. Mr. Abraham, you did reserve some time. MR. ABRAHAM One point, Your Honors, that I should make is that this Court in American Standard held that the term issuer is a term of art relating to its own registered equity securities. That's at 510F2nd 1043-1062. It's a 1974 decision by this Court. And in this case, TBI is the issuer because it's the entity that has the equity securities registered with the SEC. Men's Warehouse, in contrast, no longer has equity securities registered with the SEC. It passed the baton to TBI. And as a result, under the definition of issuer, as determined by this Court in American Standard, TBI is, in fact, the issuer. And I'll go back and say that Rule 414 provides the same result. I don't need to re-argue that point. And all the other cases were ones in which there was issuer number one, acquired issuer number two, and issuer number two became a wholly owned subsidiary of issuer number one. That's the same thing that happened in Golis. It's the same thing that happened in Untermyer. It's the same thing that happened in every case upon which a district court relied. And in that circumstance, there already was an issuer. So the issuer became a wholly owned subsidiary of another corporation which itself was the issuer. And that's the reason why Golis is not on point and Golis itself is dicta. And I go back to the points I referred to before, that it's dicta if they were going to change the definition of the statute inconsistent with American Standard, they would have had to lay it out a little bit more specifically. Also, I'm not accusing Mr. Schwartz's client of fraud. I'm just noting the timing of the merger, which was done in violation of Rule 414C, which unequivocally requires shareholder approval pursuant to a proxy statement, was very conveniently timed to cut off plaintiff standing to sue. And that should be, I believe it should be a concern to the court though. Of course, I have a prejudice of a lawyer who represents the plaintiff in this case. One point, I'll rest on the papers on the issue of the purchase. I think even Judge Abrams said that why don't the defendants show us the documents which demonstrate that, in fact, was one purchase, and I think that's where she was leaning. But on the issue of common objective, I believe that defendants are misstating what the common objective is in this case. The common objective was voting. They all agreed to vote their securities in favor of the existing board of directors or as recommended by the company through its board of directors. So, TBI is the issuer in this circumstance. It's a completely different set of facts than Gallist in a very subtle way, but nonetheless different. We have alleged a prima facie case under Section 16B, and for those reasons, I respectfully request that the court reverse the district court's decision. Thank you, Your Honors. Thank you very much, gentlemen. We're going to take this case under advisement. We have three other cases on our calendar today, but they're all being submitted, so we stand adjourned. Court is standing adjourned.